Filed 11/27/23  Woods v. Law Offices of Shahrokh Mokhtarzadeh CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALFREDO WOODS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LAW OFFICES OF SHAHROKH MOKHTARZADEH, PLC et al.,<br><br>Defendants and Respondents. | B318790<br><br>Los Angeles County<br>Super. Ct. No. BC707662 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Christopher K. Lui, Judge.  Affirmed.

Alfredo Woods, in pro. per., for Plaintiff and Appellant.

Michelman & Robinson and Steven S. Davis for Defendants and Respondents.

_____

**SUMMARY**

Plaintiff Alfredo Woods tells us in the introduction to his opening brief that he brought a claim for legal malpractice, and his appeal arises from the trial court's grant of defendants' motion for nonsuit and the court's subsequent denial of his motion for a new trial. That is the last we hear about the motion for nonsuit or the rulings until page 23, where plaintiff describes *defendants*' contentions, and on page 24, where plaintiff contends the grant of nonsuit was "a grave error that overlooked the overwhelming weight of evidence demonstrating intentional disloyalty, negligence, and deficient legal advice by [defendants]."

Plaintiff does not engage with the legal principle underlying the court's nonsuit ruling. Plaintiff was required to establish more than defendants' malpractice. The issue in the case was not whether defendants were negligent; that element of plaintiff's case was presumed in the motion for nonsuit. The issue was whether plaintiff proffered any evidence that in the absence of the alleged malpractice, plaintiff would have achieved a better result. The court concluded that, drawing all inferences in favor of plaintiff, "there's simply no evidence . . . that has been offered that would prove [the] causation and damages element . . . ."

We see no error in that conclusion. Moreover, while defendants have not raised the point, our review of plaintiff's opening brief and appendix reveals that plaintiff has failed to comply with multiple rules of appellate procedure, a failure that justifies a finding he has forfeited any argument that the motion for nonsuit was erroneously granted. His statement of facts goes on for 20 pages, often with no citations to the record, and the citations that are included are to a string of exhibits, declarations and other documents, without telling us where in his 3,267-page

2

appendix any of the documents may be found. Plaintiff's legal argument contains no citations to the record at all. We have no obligation to ferret out the facts on our own, and when we nonetheless do so, we find evidence related to defendants' alleged malpractice, not to whether that malpractice caused the damages plaintiff claims.

We affirm the order granting defendants' motion for nonsuit and the ensuing judgment.

## FACTS

Plaintiff's malpractice claim arose from an eminent domain case in which the defendants – Law Offices of Shahrokh Mokhtarzadeh, PLC and Shahrokh Mokhtarzadeh – represented plaintiff. Plaintiff owned property he intended to use for solar generation, its highest and best use. His malpractice lawsuit alleged defendants failed to retain necessary qualified property valuation experts before trial. The court issued an order precluding plaintiff from reopening expert witness discovery so that he could hire a new expert witness (who would supplement the flawed opinion of the unqualified appraiser who had valued the property at $75,000 (the Blaesi appraisal)). "[A]t that point" plaintiff was forced to settle or go to trial with a flawed appraisal.

Plaintiff filed his malpractice lawsuit on May 29, 2018, and the operative second amended complaint on April 9, 2019. He alleged causes of action for professional negligence, breach of fiduciary duty and breach of contract, among others. (Defendants filed a cross-complaint to which plaintiff did not respond, and defendants requested a default judgment on the cross-complaint.)

Plaintiff contended he was forced to settle out of court "with a very bad and failed appraisal report," and the City (Los Angeles Department of Water and Power, LADWP) would have paid more for his property than the settlement amount ($70,000), but for defendants' handling of the case. Plaintiff cited an appraisal

3

report he obtained (the Connolly appraisal), dated February 6, 2018, valuing the property at $218,800 as of May 3, 2016.

Plaintiff made his opening statement to the above effect on December 8, 2021. Virtually all of his opening statement concerned the evidence of defendants' negligence.

On December 9, 2021, defendants made an oral motion for nonsuit, pointing out plaintiff offered no evidence the City would have settled for more and no expert testimony that plaintiff would have achieved a better result at trial. Counsel also pointed out, among other things, that plaintiff's legal malpractice expert specifically stated he had no opinions on causation or damages.

The trial court told plaintiff that defense counsel had raised "very compelling and valid points about what the evidence is," and advised plaintiff to discuss in his response any additional evidence not previously discussed. Plaintiff then argued about the Connolly appraisal report, defendants' negligence that forced him to settle, the flawed Blaesi appraisal he had to use, and another property owner in the same eminent domain proceeding who received a settlement of over $180,000 for a smaller property.

The trial court concluded there was no evidence offered to show the City would have agreed to pay more than $70,000, and no expert testimony that would support causation and damages if plaintiff had gone to trial instead of settling: "[A]ssuming all other facts alleged are true and drawing all inferences in favor of [p]laintiff], as I must, there's simply no evidence . . . that has been offered that would prove the causation and damages element . . . for the reasons [defense counsel] stated." (Among other things, defense counsel again pointed out that while the joint witness list states that plaintiff's expert witness on legal malpractice would testify to subjects including causation and

4

damages, at his deposition the expert explicitly disclaimed offering any opinions on causation or damages.)

On February 9, 2022, plaintiff filed a notice of appeal from the court's December 9, 2021 ruling on the nonsuit motion. At the time of the December 9, 2021 hearing, there had been no hearing on the default judgment on defendants' cross-complaint, and the court scheduled that hearing for January 27, 2022. The court indicated it would enter "one single judgment" on the complaint and the cross-complaint. That judgment was entered on May 12, 2022.

Plaintiff filed a motion for a new trial based on error of law, which the trial court denied in an eight-page ruling on October 21, 2022.

## DISCUSSION

Plaintiff's opening brief disregards many principles governing appellate review. While plaintiff is representing himself, that does not excuse his failure to follow basic rules and principles. (See, e.g., *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 ["Although [the appellant] is representing himself in propria persona, he is not exempt from the rules governing appeals. A self-represented party is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys."].)

"It is axiomatic that an appellant must support all statements of fact in his briefs with citations to the record [citation] and must confine his statement 'to matters in the record on appeal.' " (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29.) We have already observed that plaintiff has violated this principle throughout his brief, and that where there are record citations, most of them are to exhibits with no indication where the exhibit may be found. (The index to plaintiff's appendix has

5

an entry entitled "Plaintiff's Exhibit List" which, as it turns out, includes almost 3,000 pages.)  This violates court rules requiring the appendix to contain, at the beginning, indexes "listing each document and the volume, where applicable, and page where it first appears."  (Cal. Rules of Court, rules 8.144(b)(5)(A) & 8.124(d)(1).)  It also violates the rule that a brief must support any reference to a matter in the record "by a citation to the volume and page number of the record where the matter appears."  (Rule 8.204(a)(1)(C).)

" 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.'  [Citation.]  Nor are we 'required to search the record on [our] own seeking error.' "  (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 (*L.O.*).)  " ' "[I]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived." ' "  (*Ibid.*; see *ibid.* ["[The appellant's] briefs do not properly cite the record and are replete with unsupported legal and factual assertions.  Because [the appellant] failed to appropriately cite the record, he forfeited any argument that the challenged orders were erroneously issued."].)

The failure to cite the record is not the only deficiency in plaintiff's briefing.  As we also observed at the outset, plaintiff's discursive arguments fail to address the pertinent legal point: whether the facts plaintiff alleged demonstrate that, but for defendants' malpractice, plaintiff's eminent domain case "would have settled for more or gone to trial and resulted in a larger recovery."  (*Barnard v. Langer* (2003) 109 Cal.App.4th 1453, 1462 (*Barnard*).)  Without evidence that the LADWP "would have settled for more or that a trier of fact would have awarded more"

6

(*ibid.*) than the $70,000 settlement, plaintiff's arguments about defendants' professional negligence take us nowhere.

Plaintiff's failure to offer reasoned argument on the pertinent legal point, like his failure to cite support in the record, waives the argument. (*L.O., supra,* 96 Cal.App.5th at p. 620 [" '[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived' "].)

But even if we ignore all the deficiencies in plaintiff's briefing and his presentation of the record, his appeal would nonetheless fail on the merits because the trial court correctly found that plaintiff proffered no evidence sufficient to allow a fact finder to conclude that, but for defendants' negligence, he would have recovered more in settlement or at trial.

We state first the standard of review, which plaintiff also fails to describe in his briefing. The standard of review for a nonsuit after the plaintiff's opening statement is de novo: " ' "It can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of [his] cause of action . . . ." ' " (*Carachure v. Scott* (2021) 70 Cal.App.5th 16, 25.)

In a legal malpractice case, the plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred. (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1582 (*Namikas*).)

7

As already described, most of the evidence plaintiff offered concerned defendants' negligence that forced him to settle. Other than that, there was the Connolly appraisal report valuing the property at $218,800; the flaws in the Blaesi appraisal report plaintiff had to use; and the settlement of another property owner in the same eminent domain proceeding who received over $180,000 for a smaller property. What is absent is the same thing that was absent in *Barnard*: any evidence that LADWP would have settled for more, or expert evidence that a trier of fact would have awarded more. As the trial court put it, plaintiff "makes no claim that [Mr. Connolly] would have been able to proffer an expert opinion that either (1) the City would have paid more to settle or that (2) Plaintiff would have done better at trial if Plaintiff had submitted an . . . appraisal other than Mr. Blaesi's appraisal in the underlying case." As the *Barnard* court observed, "None of [the plaintiff's] evidence does more than suggest speculative harm . . . ." (*Barnard, supra,* 109 Cal.App.4th at p. 1462; *ibid.* ["[The plaintiff] offered no evidence that the City would have settled for more or that a trier of fact would have awarded more . . . , leaving the harm caused by the [defendant's] negligence as 'only a subject of surmise, given the myriad of variables that affect [trials] of [inverse condemnation] actions. "[T]he mere probability that a certain event would have happened, upon which a claim for damages is predicated, will not support the claim or furnish the foundation of an action for such damages. . . ." ' "].)

We have one further observation on this subject. Defendants repeatedly emphasize language from *Namikas* and other cases to the effect that, in a legal malpractice case, " ' "Damage to be subject to a proper award must be such as

8

follows the fact complained of as a *legal certainty*." [Citation.]'
[Citation.] In other words, the plaintiff must show that '[he]
would *certainly* have received more money [or had to pay less] in
settlement or at trial.' " (*Namikas, supra,* 225 Cal.App.4th at
p. 1582.) Plaintiff responds that this is "an attempt to confuse
and sway the Court to the position that there is a higher burden
of proof, i.e. 'legal certainty.' " (Capitalization omitted.) Plaintiff
cites *Masellis v. Law Office of Leslie F. Jensen* (2020)
50 Cal.App.5th 1077 (*Masellis*).

We are not confused. Indeed, *Namikas* expressly states
that the plaintiff must prove, "by a preponderance of the
evidence," that he or she would have obtained a more favorable
judgment or settlement but for the defendant's negligence.
(*Namikas, supra,* 225 Cal.App.4th at p. 1582.) *Masellis* rejected a
claim that the legal certainty standard imposes a higher
standard of proof than a preponderance of the evidence by
"interpreting the statement that a plaintiff must present
'evidence showing to a legal certainty that' the alleged breach of
duty caused an injury [citation] as simply referring to the degree
of certainty inherent in the applicable burden of proof. For 'settle
and sue' legal malpractice actions, we conclude the applicable
burden of proof is a preponderance of the evidence." (*Masellis,
supra,* 50 Cal.App.5th at p. 1083.)

The trial court considered and addressed the *Masellis* case
in denying plaintiff a new trial: "*Masellis* simply uses different
language to describe the same analysis: a trial court must weed
out speculative claims by looking to whether the evidence
supports a finding that in the absence of the alleged malpractice,
a plaintiff would have achieved a better result. [Citation.] In the
instant case, Plaintiff did not make an offer of proof that

9

admissible, nonspeculative evidence would support a finding that the use of another expert would have resulted in a higher settlement." We agree.

To the extent plaintiff argues his claims for breach of contract and breach of fiduciary duty are distinct from his professional negligence claim, the distinction fails. As the trial court observed, all causes of action "are directed at exactly the same conduct," and "[t]he speculative nature of Plaintiff's purported evidence of causation is a common defect that crosses all of Plaintiff's claims."

Finally, on pages 47 and 48 of his opening brief, plaintiff "requests the dismissal of the defendants' counterclaim and the unfair default judgment, as he was denied an opportunity to respond." That is all plaintiff says on the subject, and the assertion provides no basis for reversal of the default judgment.

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.


GRIMES, J.

WE CONCUR:



STRATTON, P. J.



VIRAMONTES, J.

10